# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br>QUARLES, CONNSTANCE N.<br><br>Debtor,<br>_____<br><br>GEORGE W. CALDWELL, M.D., and<br>EMERGENCY CARE, INC., d/b/a<br>MEDCENTER II OF TULSA,<br><br>Appellants,<br><br>v.<br><br>PATRICK J. MALLOY, III,<br><br>Appellee. | )<br>)<br>)<br>)<br>)<br>) _____<br>)<br>)<br>)<br>)   No. 06-CV-137 CVE/SAJ<br>)<br>)<br>)<br>)<br>)   (Bankruptcy Case No. 04-11059-R)<br>)<br>)<br>)<br>) |

## **REPORT AND RECOMMENDATION**

This Court, having reviewed the arguments and authority submitted in the above referenced matter, enters the following report and recommendation:

### **I. Background**

This appeal arises from an order of the bankruptcy court entered October 12, 2005, granting Patrick J. Malloy, III, Trustee's ("Trustee/Appellee") motion to reopen the underlying bankruptcy case to list a previously undisclosed asset, a tort lawsuit pending against appellants George W. Caldwell, M.D., and Emergency Care, Inc., d/b/a MedCenter II of Tulsa ("Appellants") in state court. Appellants urge they had no notice of the motion and when they learned the order had been entered, they filed a motion to vacate the order, which was denied on February 2, 2006. Appellants filed a timely notice of appeal and

1

election to have appeal heard by the United States District Court.

Appellants urge the two issues on appeal are:

1. Whether the bankruptcy court erred in its application of judicial estoppel to Appellee's request to reopen the bankruptcy case?

2. Whether the bankruptcy court properly applied the doctrine of judicial estoppel in denying Appellants' motion to vacate order to reopen bankruptcy and appointment of trustee?

Appellee Trustee urges there was no obligation to send notice to Appellants of the motion to reopen as neither is a real party in interest in the bankruptcy. Trustee asserts Appellants do not have standing to pursue the appeal because they have no economic interest or stake in the reopening of those proceedings. Trustee asserts the two issues on appeal are:

1. Whether Appellants have standing to prosecute this appeal; and,

2. Whether the bankruptcy court abused its discretion in denying Appellants motion to vacate the order reopening the bankruptcy case and directing the appointment of a Chapter 7 Trustee to allow a previously undisclosed malpractice claim to be administered on behalf of the bankruptcy estate.

Trustee does not disagree with the statement of the case as set forth by Appellants, which is that the case involves whether the doctrine of judicial estoppel can be applied to prevent the Chapter 7 Trustee from pursuing a tort lawsuit against Appellants, when it is undisputed that Constance N. Quarles ("Debtor") failed to list the asset in her bankruptcy pleadings, failed to reveal the asset to the Chapter 7 Trustee, and as a result ultimately received a "no-asset" discharge. The bankruptcy court addressed and rejected application of judicial estoppel.

## II. The 2004 Bankruptcy Proceedings

On February 26, 2004, Debtor filed her Voluntary Petition in the bankruptcy court requesting relief under Chapter 7 of the Bankruptcy Code, alleging that no funds would be available for distribution to unsecured creditors after exempt property was excluded and administrative expenses were paid. The Petition was signed under penalty of perjury and Debtor stated that the information provided was true and correct. Her bankruptcy attorney also signed the Petition and verified that he had explained the relief available under each chapter of the bankruptcy code. In the "Disclosure of Compensation of Attorney for Debtor," counsel stated he had provided legal services for all aspects of the bankruptcy, including analyzing Debtor's financial condition, preparing and filing petition, schedules, and statement of affairs, and representing Debtor at the meeting of creditors.

In the schedules, Debtor listed approximately $4,862.00 in total assets and $104,400.00 in total liabilities. Schedule B, at question 20, asked Debtor to list "other contingent and unliquidated claims of every nature. . ." To this, Debtor checked "NONE." Debtor's list of creditors holding unsecured nonpriority claims was extensive. Debtor signed a "Declaration Concerning Debtor's Schedules" in which she declared under penalty of perjury that the schedules were "true and correct to the best of my knowledge, information, and belief."

Debtor was also required to fill out a "Statement of Financial Affairs." Question number four (4) requested information related to any lawsuits or administrative

3

proceedings in which the Debtor had been a party within the previous year. She listed a mortgage foreclosure action filed in Tulsa County District Court, in which a sheriff's sale was set. This was also signed under penalty of perjury, without mention of any other lawsuits.

Meeting of creditors was held on March 26, 2004. Following this, Trustee stated that he had performed his statutory duties and there were no assets to administer for the benefit of creditors of the estate. Accordingly, he issued a Report of No Distribution and the bankruptcy court entered a no-asset discharge in favor of Debtor on June 10, 2004, which prohibited any attempt to collect from Debtor a debt that had been discharged. Final decree was entered on June 30, 2004 and the case was closed.

### III. Concurrent State Court Tort Litigation

On September 18, 2001, Debtor filed a lawsuit against Appellant Emergency Care, Inc., which she dismissed without prejudice on January 11. 2002. On January 8, 2003, Debtor refiled her lawsuit against George Caldwell, M.D., and Emergency Care, Inc., d/b/a MedCenter II of Tulsa, Inc., asserting claims on behalf of herself and as a surviving spouse of James O. Quarles. The case has been ongoing since that date but was stayed by the state court judge pending resolution of the motion to vacate in the bankruptcy court.

When Debtor's bankruptcy petition was filed over a year later, and while the state tort claim was pending, Debtor filed bankruptcy pleadings and schedules in

4

which she did not disclose the state court claim, although she did disclose the mortgage foreclosure which was also pending in state court.

In September of 2005, Appellants learned of Debtor's 2004 bankruptcy filing. Appellants filed a motion to dismiss in the state court proceeding based upon the assertions that Debtor had no standing to pursue the state court action, and if she did, the claim was judicially estopped. After the state court motion was filed, Debtor contacted the Chapter 7 Trustee, who filed the motion to reopen. Appellants were not notified of the filing of the motion to reopen and the motion was granted. The Trustee filed an interim report and Debtor's bankruptcy counsel submitted amendments to Schedules B and C, and to the Statement of Financial Affairs, all of which related to the omitted state tort claim.

Appellants learned of the order granting the motion to reopen and filed a motion to vacate based upon judicial estoppel.  A hearing was held on January 25, 2006 after the issue was fully briefed and the bankruptcy judge entered an order on February 2, 2006, denying the motion to vacate.

### IV. Bankruptcy Order

The bankruptcy court found Appellants had standing to object to the re-opening of the bankruptcy because of their position as a potential "debtor of a debtor." The court found that none of the elements of judicial estoppel set forth in *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005) were present. These included: (1) whether the party's position is clearly inconsistent with a previous position; (2)

whether the party successfully persuaded a court to accept the previous position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Johnson*, 405 F.2d at 1069 (citations omitted). Judicial estoppel therefore did not prevent Debtor and the Chapter 7 Trustee from reopening the bankruptcy case for the purpose of pursuing a claim that had been omitted from the previous proceedings.

The court found that the Trustee had not assumed any position previously with respect to the tort claim, and the Trustee was not bound by acts associated with the Debtor's "post-petition duties." Additionally, because the Trustee received no notice of the claim, he did not succeed in persuading a court to accept any prior position with respect to the lawsuit. The court held that the Trustee would not derive any unfair advantage if the case was reopened, nor would reopening impose an unfair detriment on the opposing party. The court referenced the options available to the system to deal with a debtor's failure to list assets, including criminal sanctions or equitable remedies.

## V. Argument and Authority

Trustee first raises the very fundamental jurisdictional assertion that Appellants did not have standing to request the bankruptcy court to vacate the order reopening the case in the bankruptcy court and do not now have standing to prosecute this appeal. This Court agrees.

The bankruptcy court resolved the standing issue in Appellants' favor,

adopting the reasoning of *In re Tarrer*, 273 B.R. 724 (Bankr. N.D. Ga. 2002). The District Court for the Northern District, however, has since decided the issue differently. In *In re Kreutzer*, Case No. 05-CV-725 CVE/FHM, Chief Judge Claire V. Eagan affirmed the report and recommendation of Magistrate Judge Frank H. McCarthy and adopted the analysis of the definition of "party in interest" as applying exclusively to debtors, creditors, or trustees. Judge Eagan based her conclusion upon the reasoning of the Tenth Circuit Court of Appeals in *Nintendo Company, Ltd., v. Patten (In re Alpex),* 71 F.3d 353 (10th Cir, 1995) ("*Nintendo*").

In that case, Nintendo, an alleged patent infringer, attempted to reopen a Chapter 11 bankruptcy because the debtor-patent holder had an unresolved patent claim against Nintendo. Nintendo sought to have the bankruptcy court enforce Nintendo's interpretation of the reorganization plan which would have compelled Trustee to discontinue litigation against Nintendo or aid in settlement.

The Tenth Circuit held that Nintendo did not have standing to reopen because its debt was "inchoate" and Nintendo was not a "party in interest" pursuant to 11 U.S.C. § 350(b) concerning reopening and in Federal Rule of Bankruptcy Procedure 5010 which provides: "A case may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code."[1] The Court held that although the concept of "party in interest" is broadly defined, it is "implicitly confined

---

[1] 11 U.S.C. § 350(b), provides "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code." *Nintendo*, 71 F.3d at 356.

Judge Eagan found that the Court's analysis in *Nintendo* regarding standing to be relevant in *Kruetzer*, a Chapter 7 case very similar to the instant action. Both *Kruetzer* and the case at bar involve debtors who did not disclose medical malpractice claims which had accrued prior to the bankruptcy petitions being filed and whose bankruptcies were reopened to allow those claims to be included in the estates after the medical malpractice defendants became aware of the bankruptcies and filed motions to summarily dismiss the state claims against them based upon judicial estoppel. In *Kruetzer,* debtor moved to reopen whereas in this action, Trustee moved to reopen.

The malpractice defendants do not have a direct pecuniary interest in the bankruptcies. Prior to any potential future, and at this point hypothetical, state court judgments being entered, no malpractice defendants owe any debt to the respective debtors in the bankruptcies. Under this scenario, the only difference in the position of Appellants if the claim is not allowed to be added to the bankruptcy is that they would effectively be allowed to sidestep possible liability to debtors and be freed from the cost of continuing a defense.

Trustee, however, would lose the right to pursue potential assets which rightfully should be distributed to creditors. Trustee in this instance is in a legally superior position to that of the debtor in *Kruetzer.* In that he was completely unaware

of the state malpractice claim whereas the debtor in *Kruetzer* could not have been unaware of the claim.

This Court must therefore adopt the well reasoned opinion in *Kruetzer* and recommend the appeal be dismissed.

The Court need not address the issue of judicial estoppel in light of this conclusion. However, as an alternate disposition, the Court has reviewed the arguments and authority presented by Appellants as to the issue of judicial estoppel and finds these to be virtually identical to those raised and addressed in *Kruetzer*. The Court concludes the bankruptcy court was correct in exercising its discretion to deny the motion to vacate on the merits.

## VI. Recommendation

This Court recommends the appeal be dismissed for want of standing. Alternatively, the Court finds judicial estoppel does not serve as a bar for Trustee to reopen the bankruptcy and the bankruptcy decision in that regard should be affirmed.

## VI. Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation. Objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within 10 days of being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 6 (as to computation of time periods).  If specific written

objections are timely filed, the district judge assigned to this case will

> make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b). *See also* 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in connection with appeals from orders adopting a Magistrate Judge's report and recommendation. "[T]he failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir. 1996) (*quoting Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). **Thus, a timely, specific and written objection is necessary to preserve an issue for *de novo* review by the assigned district judge and for appellate review by the court of appeals.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Haney v. Addison*, 175 F.3d 1217 (10th Cir. 1999); and *Talley v. Hesse*, 91 F.3d 1411 (10th Cir. 1996).

Dated this 16th day of November, 2006

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge